UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| TONYA JONES, Administratrix of the Estate of John Daulton, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 2: 23-164-DCR |
| V. | ) ) | |
| KENTON COUNTY, KENTUCKY, et al., | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Tonya Jones, Administratrix of the Estate of John Daulton, filed this action alleging multiple violations of federal and state law arising from an in-custody assault of John Daulton at the Kenton County Detention Center ("KCDC").   [Record No. 1] Daulton subsequently died from his injuries.  Defendants Kenton County, Kentucky, Jailer Marc Fields, and Deputy Jailer Jared Capps have moved to dismiss the plaintiff's claims.  Alternatively, they request entry of summary judgment in their favor.  [Record Nos. 5, 6]

For the reasons explained more fully below, the defendants' motion to dismiss will be granted, in part, and denied, in part. Count One will be dismissed regarding Kenton County and Jailer Fields.  Count Five will be dismissed regarding Kenton County, as well as Jailer Fields and Deputy Capps in their official capacities, pursuant to the doctrine of sovereign immunity under Kentucky law.  The defendants' Motion for Summary Judgment will be denied pursuant to Rule 56(d) of the Federal Rules of Civil Procedure.

**I.**

This case involves the tragic death of John Daulton at the hands of his cellmate, Jonathan Maskiell.[1]  Tonya Jones, the daughter of John Daulton and the Administratrix of his estate, is seeking compensatory and punitive damages for alleged violations of Daulton's rights protected by the United States Constitution and the laws of the Commonwealth of Kentucky.

**A.**

On May 13, 2023, at 7:51 p.m., sixty-one-year-old Daulton was arrested by Covington Police for an alleged probation violation.  He was then transported to KCDC.[2]  [Record No. 1, ¶ 13]  At 8:10 p.m., Daulton began the booking process, which was overseen by Deputy Capps.  [*Id.* ¶¶ 16–17]  The plaintiff alleges that the arresting officer and Capps failed to complete the required sections of Daulton's "Intake Assessment Form."  [*Id.* ¶ 17]

Daulton initially refused to respond verbally to questioning and was placed in solitary confinement cell "OB3" until the intake process could be completed.  [*Id.* ¶¶ 16–17]  Despite Daulton finishing this process at 10:41 p.m., he remained in cell "OB3."  [*Id.* ¶¶ 18, 21]  Shortly before 1:45 a.m. on May 14, an unknown deputy requested Daulton be evaluated by Bluegrass

---

[1]     The defendants filed a Notice of Supplemental Procedural Development on April 16, 2024, informing the Court that Maskiell has pleaded guilty to Daulton's murder.  [Record No. 13]  The briefing also highlighted a recent opinion of the United States Court of Appeals for the Sixth Circuit, *Caraway v. CoreCivic of Tenn., LLC*, No. 23-5410, 2024 WL 1546522 (6th Cir. 2024). The Court was familiar with the *Caraway* decision prior to the defendants' filing.  However, it will not be considered to the extent that the filing may have improperly supplemented the defendant's pending motions.

[2]     As the elected County Jailer, Marc Fields has final supervisory and policymaking authority over KCDC's operations.  [Record No. 1, ¶¶ 3–4]  The Complaint does not allege that Jailer Fields had any interaction with Daulton or directly participated in any of the decisions that led to Maskiell's placement in cell 125B with Daulton.

Mental Health ("Bluegrass").[3]  [*Id.* ¶ 22]  The defendants' indicate that the request was due to Daulton's acknowledgement of depression when completing his medical questionnaire and that the decision to contact Bluegrass was consistent with KCDC policy.  [Record Nos. 5-1, p. 7; 5-8, p. 2]  Daulton was placed on a high-risk suicide watch following his assessment with Bluegrass, although it remains unclear how that determination was ultimately made.  [Record No. 1, ¶ 26]  At approximately 1:50 a.m., Daulton was placed in "high-watch" cell 125B where he was to be observed every 10 minutes.  [Record Nos. 1, ¶¶ 60–61; 5-6, p. 2]  The plaintiff alleges that KCDC personnel failed to comply with this observation requirement a total of 22 times.  [Record No. 1, ¶ 62]  She further claims that Daulton "was confined to a restrictive 'turtle suit.'"[4]  [Record No. 1]

Jonathan Maskiell's was incarcerated on May 14 at approximately 1:46 a.m.  [Record No. 1]  He was placed in cell 125B with Daulton at 4:47 a.m..  [*Id.*]  The defendants' claim that Maskiell was also placed on suicide watch "over concern that [he] may have suicidal ideations while detained."  [Record No. 5-1, p. 17]  Maskiell's placement in cell 125B was allegedly due to his prior use of a racial slur and because the other high-watch cells either already had two occupants or were being used to house a Black inmate.  [*Id.*]  The defendants

---

[3]     Bluegrass Mental Health is a third-party non-profit organization offered to Kentucky's county jails, which provides "suicide assessment and risk management for inmates while they are in custody."  [*See* Record No. 1, ¶ 23]

[4]     "A 'turtle gown/suit' is a tear-resistant single-piece outer garment that is generally used to prevent hospitalized, incarcerated, or otherwise detained individuals from forming a noose with the garment to commit suicide."  *Estes v. Commonwealth*, No. 2018-CA-1422, 2020 WL 6112914, at *3 n.3 (Ky. App. Oct. 16, 2020).

contend that the decision to place Maskiell with Daulton was premised on the belief that it was "the safest option for everyone involved." [*Id.*]

The plaintiff asserts that, at 7:47 a.m., KCDC received a law enforcement notification cautioning jail employees that Maskiell had "violent tendencies." [Record No. 1, p. 2] It is unclear who whom this notification was ultimately shared. At 10:23 a.m., Daulton was assessed by nurse Whitney Price, who reportedly recommended him for placement in KCDC's general population. [Record Nos. 1, ¶ 29; 5-1, p. 18] But despite this recommendation, Daulton was returned to cell 125B with Maskiell. The defendants' note that Price's recommendation would not have superseded the high-watch determination set by Bluegrass because Daulton was still within an initial 24-hour observation period. [Record No. 5-1, p. 18]

The plaintiff claims that, at 2:55 p.m., Deputy Cobb observed Daulton lying on the concrete floor of cell 125B while Maskiell stood over him, kicking and stomping his face. [Record No. 1, ¶ 49] Deputy Cobb's entry into the cell was reportedly delayed because he had to retrieve the key to the cell door from the Deputy Control Station. [*Id.* ¶ 50] And it is unclear how long that took or at what point Maskiell's attack ended. However, the parties agree that immediately after the assault, Maskiell told deputies he did not know why he did it. [*Id.* ¶ 51; Record No. 5-1, p. 1] He also reportedly stated: "the Bloods are trying to get everybody to kill everybody" and "the voices in my head are telling me to." [Record No. 1, ¶ 51] Daulton suffered severe brain damage as a result of the assault and remained in a coma until he died from his injuries on May 21, 2023. [*Id.* ¶ 52]

- 4 -

## B.

Jones initiated this action on December 1, 2023, pursuant to this Court's federal question and supplemental jurisdiction. 28 U.S.C. §§ 1331, 1367. The first three counts of the Complaint contain allegations of deliberate indifference under 42 U.S.C. § 1983. The claim contained in Count One is asserted against all defendants for violations of Daulton's Fourth, Eighth, and Fourteenth Amendment rights under the United States Constitution. Counts Two and Three contain *Monell* claims brought against Jailer Fields and Deputy Capps in their official capacities. The Complaint also includes two claims based on alleged violations of Kentucky law. In Count Five the plaintiff alleges wrongful death and in Count Six she asserts a claim for punitive damages.[5]

The defendants filed a motion seeking to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Alternatively, the seek summary judgment pursuant to Rule 56. [Record Nos. 5, 6] Both motions have been fully briefed.

## II.

As an initial matter, the Court addresses whether Daulton was a pretrial detainee or a convicted prisoner at the time of the in-custody assault that led to his death. This distinction determines whether the allegations of deliberate indifference are properly analyzed under Eighth or Fourteenth Amendment jurisprudence. *See Kingsley v. Hendrickson*, 576 U.S. 389 (2015); *Brawner v. Scott County*, 14 F.4th 585, 596 (6th Cir. 2021) ("Given *Kingsley*'s clear delineation between claims brought by convicted prisoners under the Eighth Amendment and

---

[5]     In Count Four, the plaintiff asserts that unknown defendants failed to intervene to protect Daulton.

claims brought by pretrial detainees under the Fourteenth Amendment, applying the same analysis to these constitutionally distinct groups is no longer tenable.").

### A.

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citing *Helling v. McKinney*, 509 U.S. 25 (1993)).   Deliberate indifference can take the form of "inadequate medical care, a failure to protect the plaintiff from other inmates, or some other cognizable basis . . . ." *Rhodes v. Michigan*, 10 F.4th 665, 673 (6th Cir. 2021).   Regardless of the underlying allegation, Eighth Amendment deliberate indifference claims have an objective and subjective component that must be satisfied. *Brawner*, 14 F.4th at 591.   For a claim based on a failure to prevent harm, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm," and that prison officials know of the substantial risk and disregard it "by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 834, 847.

Because the Eighth Amendment protection against cruel and unusual punishments "kicks in only after a conviction," it does not apply to pretrial detainees.  *Lawler v. Hardeman County*, 93 F.4th 919, 926 (6th Cir. 2024); *see* U.S. Const. amend. VIII.   But the Fourteenth Amendment's Due Process Clause "offers protections to pretrial detainees that at least match those afforded convicted prisoners under the Eighth Amendment."  *Lawler*, 93 F.4th at 926; *see* U.S. Const. amend. XIV.   Unlike a deliberate indifference claim brought under the Eighth Amendment, "officers can face liability even if they did not *actually know* of a risk of harm to a pretrial detainee.   Pretrial detainees need only prove that the officers *recklessly disregarded*

a risk so obvious that they either knew or should have known of it." *Lawler*, 93 F.4th at 927 (citing *Helphenstine v. Lewis County*, 60 F.4th 305, 317 (6th Cir. 2023)) (emphasis in original); *see Westmoreland v. Butler County*, 29 F.4th 721, 728 (6th Cir. 2022) ("[A] pretrial detainee establishes deliberate indifference by proving 'more than negligence but less than subjective intent—something akin to reckless disregard.'" *Brawner*, 14 F.4th at 596–97)).

**B.**

It does not appear that the Sixth Circuit has ever expressly stated whether a person detained for an alleged probation violation is a pretrial detainee or a convicted prisoner. But in at least one unreported case, the Sixth Circuit affirmed a grant of summary judgment—which applied the Fourteenth Amendment pretrial detainee test—against the estate of an individual who died in custody after being arrested for a probation violation. *Britt v. Hamilton County*, No. 21-3424, 2022 WL 405847, at *1–2 (6th Cir. Feb. 10, 2022). The court, however, did not explain whether the decedent's designation as a pretrial detainee was proper or how lower courts should resolve that question in the future.

In *Peterson v. Heinen*, 89 F.4th 628, 635 (8th Cir. 2023), the United States Court of Appeals for the Eighth Circuit recently concluded that a deliberate indifference claim brought by an individual incarcerated on an unadjudicated probation violation was properly analyzed under the Eighth Amendment. It reasoned that an arrest for a probation violation places an individual "in wholly different circumstances than those of a pretrial detainee, separated by the harsh facts of criminal conviction and held instead incident to the state's ongoing punishment following adjudication of his criminal culpability." *Id.* (internal quotations omitted).

- 7 -

In the absence of clearer guidance, this Court and others in the Circuit have frequently analyzed both the Eighth and Fourteenth Amendment standards, depending on the circumstances of the dispute. *See Thomas v. S. Health Partners, Inc.*, No. 21-cv-012, 2023 WL 3935047, at *6 (E.D. Ky. June 9, 2023); *Walker v. S. Health Partners*, 576 F. Supp. 3d 516, 539 (E.D. Ky. 2021) (applying the test announced in *Brawner* to an individual arrested for a parole violation because the defendants did not argue that the more stringent Eighth Amendment standard should apply).

To maintain consistency and in the absence of binding precedent to the contrary, the undersigned turns to this Court's reasoning in *Bond v. Moore* in concluding that Daulton was a pretrial detainee at the time of his death. 672 F. Supp. 3d 357, 368–69 (E.D. Ky. 2023). Neither his prior convictions nor his being on probation negate the fact that the violation which led to his arrest and subsequent detention had not been adjudicated. As this Court pointed out in *Bond*, several opinions from the Sixth Circuit support the conclusion that an individual arrested for an unadjudicated probation or parole violation is considered a pretrial detainee. *See, e.g.*, *Bryant v. Hensley*, No. 23-5608, 2024 WL 1180440, at *1 (6th Cir. Mar. 19, 2024) ("[Decedent] violated his probation and missed court dates in three traffic-related cases. As a result, he entered the Boyd County Detention Center as a pretrial detainee . . . ."); *Martin v. Warren County*, 799 F. App'x 329, 334 (6th Cir. Jan. 22, 2020) ("[Decedent] began his pretrial detention . . . after he was arrested for a parole violation."); *Stefan v. Olson*, 497 F. App'x 568, 569 (6th Cir. Aug. 31, 2012) (describing a decedent arrested for a probation violation as a pretrial detainee). Thus, based on Daulton's status as a pretrial detainee, his estate's claims will be examined under the Due Process Clause of the Fourteenth Amendment.

## III.

Rule 12(d) of the Federal Rules of Civil Procedure provides that, if "matters outside the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." *See Caraway v. CoreCivic of Tenn., LLC*, No. 23-5410, 2024 WL 1546522, at *6 (6th Cir. 2024). However, a court is not precluded from considering matters outside the pleadings without converting to a Rule 56 motion if the documents are "referred to in the complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Accordingly, this Rule 12(b)(6) motion will be resolved without reliance on or reference to materials that would necessitate converting the motion to one brought under Rule 56.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff need not offer detailed factual allegations, but must provide more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must enable a court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. To be plausible, a claim need not be probable, but the complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In reviewing a Rule 12(b)(6) motion, courts construe the complaint "in the light most favorable to the plaintiff" and make "all inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

### A.

To state a *prima facie* case for deliberate indifference under the Fourteenth Amendment, a plaintiff must plausibly allege:

(1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
(2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
(3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
(4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Westmoreland*, 29 F.4th at 729.

The plaintiff alleges in Count One of the Complaint that the defendants exhibited deliberate indifference towards Daulton as a pretrial detainee by failing to protect him from a known risk of harm, resulting in his death.  [Record No. 1, ¶¶ 69–75]  She further contends that the defendants were aware of, or should have been aware of, the substantial risk posed by placing Daulton in a cell with Maskiell, whose violent tendencies and mental health issues were documented.  [Record No. 1, ¶ 66]  These allegations, if proven, could establish a failure to take reasonable measures to mitigate this risk, thereby violating Daulton's right to reasonable safety.  While these allegations are plausible with respect to Deputy Capps, the plaintiff fails to allege in the Complaint how Jailer Fields contributed to the placement decision.  And because vicarious liability is inapplicable to suits brought under § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  For a similar reason, this claim fails with respect to Kenton County. *See Monell v. Dep't of Soc. Servs.*, 436 U.S.

658, 691 (1978) ("[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").  Therefore, the claim contained in Count One will be dismissed with respect to Jailer Fields and Kenton County.

## B.

The plaintiff makes two separate § 1983 *Monell* claims—a policies, practices, or customs claim (Count Two) and a claim for failure to train or supervise (Count Three).[6]  Rather than serving as a distinct *Monell* claim, alleging a failure to train or supervise serves as a means of demonstrating an unlawful policy or custom.  *See Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) ("One way to prove an unlawful policy or custom is to show a policy of inadequate training or supervision.") (citing *City of Canton v. Harris*, 489 U.S. 478, 387 (1989)).  For the sake of clarity, the undersigned will nonetheless address each claim separately.

## 1.

A municipal government is not automatically liable for "an injury inflicted solely by its employees or agents."  *Monell*, 436 U.S. at 694.  The government as an entity is only responsible under § 1983 when "execution of a government's policy or custom" inflicts the injury in question.  *Id.*  To state a § 1983 claim for municipal liability under *Monell,* the pleadings must "connect [the offending] employee's conduct to a municipal policy or custom," *Gambrel v. Knox County*, 25 F.4th 391, 408 (6th Cir. 2022) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)), and then show that the injury alleged "was incurred because

---

[6]     Jones' response to the motion to dismiss clarifies that Count Three is not being brought against Jailer Fields in his individual capacity.  [Record No. 9, p. 12]

of the execution of that policy," *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993). "[P]roof merely that such a policy or custom was 'likely' to cause a particular violation is not sufficient; there must be proven at least an 'affirmative link' between policy or custom and violation; in tort principle terms, the causal connection must be 'proximate,' not merely 'but-for' causation-in-fact." *Mann v. Helmig*, 289 F. App'x 845, 850 (6th Cir. July 16, 2008) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1388 (4th Cir. 1987)).

The Sixth Circuit has highlighted four ways to demonstrate an unlawful policy, practice, or custom. "The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

In this case, the plaintiff's Complaint sufficiently articulates numerous specific policies and practices that plausibly allege deliberate indifference to the rights of pretrial detainees on the part of Kenton County, through Jailer Fields in his official capacity. It also draws an adequate causal connection between the execution of those policies and the alleged deprivation of rights. The plaintiff having met this initial burden, the defendants' motion to dismiss Count Two of the Complaint will be denied.

**2.**

The second *Monell* claim alleges that Kenton County failed to adequately train and/or supervise KCDC personnel. "To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks

performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis*, 455 F.3d at 700.

"There are two ways to support a claim that a failure to train or supervise is the result of a municipality's deliberate indifference." *Helphenstine*, 60 F.4th at 323.  The first, and most common, is by highlighting a "pattern of similar constitutional violations by untrained employees." *Shadrick v. Hopkins County*, 805 F.3d 724, 738–39 (6th Cir. 2015).  Alternately, a plaintiff can identify "a single violation of federal rights, accompanied by a showing that [the municipality] has failed to train its employees to handle recurring situations presenting an obvious potential for a constitutional violation." *Id.* at 739 (quoting *Brown*, 520 U.S. at 409) (internal quotations omitted).  "This sort of claim is available only 'in a narrow range of circumstances,' where a federal rights violation 'may be a highly predictable consequence of a failure to equip [employees] with specific tools to handle recurring situations.'" *Helphenstine*, 60 F.4th at 323 (quoting *Brown*, 520 U.S. at 409).

Jones' Complaint does not allege a pattern of similar constitutional violations, so any liability for failure to train or supervise will necessarily have to arise under the latter mode of proof.  Among other allegations, the Complaint includes accusations that KCDC personnel had specific and actionable knowledge of Maskiell's violent tendencies but still placed him in a shared cell with Daulton.  [Record No. 1, ¶ 66]  At this stage of litigation, the requisite showing has been made by the plaintiff to survive a motion to dismiss.

### C.

Count Five of the Complaint asserts a claim for wrongful death under Kentucky law. The defendants argue that that this claim against Kenton County, as well as Jailer Fields and

Deputy Capps in their official capacities, is barred by sovereign immunity. They further contend that the state wrongful death claim against Jailer Fields and Deputy Capps in their individual capacities is barred by qualified immunity. Therefore, the undersigned will address the immunity claims before turning to the merits under Rule 12(b)(6).

### 1.

Sovereign immunity "is an inherent attribute of a sovereign state that precludes the maintaining of any suit against the state unless the state has given its consent or otherwise waived its immunity." *Yanero v. Davis*, 65 S.W.3d 510, 517 (Ky. 2001). In addition to shielding the Commonwealth, sovereign immunity also protects counties and public officials sued in their official capacities. *See Bryant v. Louisville Metro Hous. Auth.*, 568 S.W.3d 839, 845 (Ky. 2019); *Robinson,* 2013 WL 560699, at *3. Because immunity has not been waived, the state wrongful death claim brought against Kenton County and Jailer Fields and Deputy Capps in their official capacities will be dismissed.

Qualified immunity under Kentucky law shields an official sued in his individual capacity from tort liability resulting from his negligent performance of (1) discretionary acts,[7] (2) made in good faith, (3) within the scope of his authority. *See Yanero*, 65 S.W.3d at 522. The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Rowan County v. Sloas*, 210 S.W.3d 469, 475 (Ky. 2006) (quoting *Anderson v. Creighton*, 483

---

[7]     Discretionary acts are "those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment." *Yanero*, 65 S.W.3d at 522. Conversely, a ministerial act is "one that requires only obedience to the orders of others, or when the [official]'s duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.*

U.S. 635, 638 (1987)).  Once the official makes a *prima facie* showing that the act was performed within the scope of his discretionary authority, "the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith."  *Yanero*, 65 S.W.3d at 523.

Here, the defendants' improperly skip their initial burden under Kentucky's qualified immunity analysis and argue that Jailer Fields and Deputy Capps are entitled to immunity because the Complaint "failed to sufficiently allege any set of facts that would plausibly support a finding of bad faith."  [Record No. 5-1, p. 22]  But by failing to first establish that the defendants' acts fell within their *discretionary* authority,[8] the Court's analysis ends and the protections of qualified immunity will be denied.[9]

**2.**

In the absence of qualified immunity, the Court turns to the sufficiency of the allegations levied against Jailer Fields and Deputy Capps.  Under Kentucky's wrongful death statute, a cause of action arises "[w]henever the death of a person results from an injury inflicted by the negligence or wrongful act of another."  KRS 411.130(1).  Count Five of the Complaint incorporates and reiterates all prior paragraphs and alleges that Jailer Fields and Deputy Capps "brought about the multiple constitutional violations" resulting in Daulton's injury and death.  [Record No. 1, ¶¶ 93–94]  As discussed in Sections III.A and B, the

---

[8]    For example, the Complaint alleges that Maskiell's cell placement was a ministerial determination pursuant to Kenton County Jail Policy Number 3.4.8, and that as a "high-risk" inmate with known violent tendencies, he should have been placed in a "single cell."  [Record Nos. 1, ¶ 56; 5-8, pp. 8–9]

[9]    The Court does not consider the defendants' provided declarations because they fall outside the pleadings.  [Record Nos. 6-9, 6-10]

allegations of specific constitutional violations are adequately pleaded to survive a motion to dismiss.  As a result, the wrongful death claim necessarily survives.

**D.**

Finally, the defendants argue that Count Six of the Complaint seeking punitive damages should be dismissed because punitive damages are an available remedy, rather than a separate cause of action.  [Record No. 5-1, p. 24]  The plaintiff expresses no opposition to withdrawing punitive damages as a separate claim as long as it remains incorporated within her prayer for relief.  [Record No. 9, p. 14]

In the federal system, "a claim for punitive damages is not a separate cause of action, but a remedy potentially available for another cause of action."  *Grubbs v. Thermo Fisher Sci.*, No. 13-cv-183, 2014 WL 1653761, at *3 (E.D. Ky. Apr. 23, 2014).  And while punitive damages are available in an action brought under 42 U.S.C. § 1983, they are not recoverable from a municipality or an individual sued in his official capacity.  *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 259–60 (1981).  Punitive damages are available for claims brought against an official in his individual capacity.  *See Smith v. Wade*, 461 U.S. 30, 35 (1983).  However, under Kentucky law, "punitive damages [are] a separate claim and not merely an additional remedy along with compensatory damages."  *Chesley v. Abbott*, 524 S.W.3d 471, 480 (Ky. App. 2017); *see* KRS 411.186(1) (referring to civil actions in which "*claims* for punitive damages are included").

To the extent that Count Six of the Complaint seeks punitive damages under Kentucky law, it may remain as a separate claim.  Punitive damages sought as a form of relief for the

allegations brought under § 1983 will only be entertained as to claims against Jailer Fields and Deputy Capps in their individual capacities.

### IV.

Having concluded that some of the claims in this action survive the defendants' motion to dismiss, the Court turns to the defendants' request for summary judgment.  In particular, the defendants argue that Jailer Fields and Deputy Capps are entitled to qualified immunity rwegarding the federal claims, as well as any surviving state law claims.  [Record No. 6]  In response to the defendants' motion for summary judgment, Jones moves for adequate time to conduct discovery pursuant to Rule 56(d).  [Record No. 9]

### A.

The Sixth Circuit has recognized a strong presumption in favor of permitting discovery before ruling on a motion for summary judgment.  *First Floor Living LLC v. City of Cleveland*, 83 F.4th 445, 453 (6th Cir. 2023); *see Vance v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996) ("The general rule is that summary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery.").  Consistent with that principle, Rule 56(d) permits a district court to deny or defer consideration of a defendant's motion for summary judgment until after the parties have conducted discovery.  *See F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 623 (6th Cir. 2014)); *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) ("It is well-established that the plaintiff must receive 'a full opportunity to conduct discovery' to be able to successfully defeat a motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)); *Elvis Presly Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 893 (6th Cir. 1991) ("Mindful of the burden on the nonmoving party to

produce evidence showing the existence of a genuine issue of material fact, summary judgment should not be granted unless the nonmoving party has had the opportunity to discover information essential to opposition.").

The defendants correctly point out that, in addition to the procedural requirement of filing an affidavit, Rule 56(d) has been interpreted as requiring that a party indicate "its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000); *see First Floor Living*, 83 F.4th at 453 ("[A] district court does not abuse its discretion by denying a Rule 56(d) motion that is supported by mere 'general and conclusory statements' or that fails to include 'any details or specificity." *Zakora v. Chrisman*, 44 F.4th 452, 479 (6th Cir. 2022)). But this requirement is subject to the Court's discretion and consideration of any "justification for [the affidavit's] lack of details and specificity." *Doe v. City of Memphis*, 928 F.3d 481, 494 (6th Cir. 2019).

The declaration in support of Jones' Rule 56(d) motion is, by itself, inadequate. [Record No. 9-4]  It states that the plaintiff has served one subpoena and received a response from a non-party, that defendants are in possession of necessary facts that are unavailable to the plaintiff, and that the plaintiff is unable to adequately respond to the motion for summary judgment in the absence of discovery.  [*Id.* ¶ 3]  Because the declaration fails to include the required content and lacks detail and specificity more broadly, it would be well within the Court's discretion to deny the motion.

But in addition to this Court's reasonable exercise of discretion, the Sixth Circuit has concluded that "a formal affidavit may not be required 'when a party has clearly explained its

need for more discovery on a particular topic to the district court prior to or contemporaneously with the motion for summary judgment.'" *Unan v. Lyon*, 853 F.3d 279, 293 (6th Cir. 2017) (quoting *United States v. Rohner*, 634 F. App'x 495, 504 (6th Cir. Dec. 11, 2015)). And because the declaration was tendered contemporaneously with Jones' response to the motion for summary judgment, the Court can also consider the plaintiff's need for discovery as articulated within the response. In doing so, the undersigned concludes that there is ample justification to deny the motion for summary judgment and proceed to discovery.

## B.

This determination necessarily postpones consideration of the defendants' qualified immunity defenses with respect to the federal claims, which were only raised in the motion for summary judgment. The undersigned is also mindful of the fact that qualified immunity is "an immunity from suit rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), and that it presents a threshold question to be resolved "at the earliest possible stage," *Bell v. City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022). Nonetheless, the Sixth Circuit has recognized that "development of the factual record is frequently necessary to decide whether the official's actions violated clearly established law." *Hart v. Hillsdale County*, 973 F.3d 627, 635 (6th Cir. 2020). Upon careful review, the undersigned concludes that this is one such instance and that consideration of the defendants' qualified immunity defense would be premature.

## V.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

- 19 -

1.      The defendants' Motion to Dismiss [Record No. 5] is **GRANTED**, in part, and **DENIED**, in part, consistent with this Memorandum Opinion and Order.

2.      The defendants' Motion for Summary Judgment [Record No. 6] is **DENIED**, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure.

Dated: April 19, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky