UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| TONYA JONES, Administratrix of the Estate of John Daulton, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 2: 23-164-DCR |
| V. | ) ) | |
| KENTON COUNTY, KENTUCKY, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Kenton County, Kentucky's motion to exclude at trial certain opinions of Gary Maynard, Plaintiff Tonya Jones' proposed expert witness. [Record No. 47] The motion will be granted, in part, and denied, in part, for the reasons outlined below.

Gary Maynard is a corrections consultant with over 45 years' experience. [Record No. 54-11] Maynard began his career as an inmate release counselor and served in positions including staff psychologist, warden, and director of multiple state departments of corrections. [*Id.*] Additionally, since February 2018, he has served in consulting roles primarily related to expert witness services and operational audits. [*Id.*] In Jones' words, Kenton County "begrudgingly [has] recognized that Mr. Maynard is qualified to offer his opinions as an expert in this case." [Record No. 55, p. 2] Accordingly, the Court will address Kenton County's specific objections to Maynard's testimony, as opposed to his overall qualifications to testify as an expert witness in this case.

- 1 -

## I.

Kenton County's motion to exclude or limit Maynard's testimony is governed by Rule 702 of the Federal Rules of Evidence. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)    the testimony is based on sufficient facts or data;
> (c)    the testimony is the product of reliable principles and methods; and
> (d)    the expert has reliably applied the principles and methods to the facts of the case.

The Court acts as a gatekeeper to ensure that expert testimony is not only relevant but also reliable. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993). No definitive test or checklist applies in determining whether an expert's opinion is admissible under Rule 702. *Id.* at 593. Instead, "any relevant scientific or technical evidence must be the product of reliable principles and methods and must have been reliably applied in the case." *United States v. Gissantaner*, 990 F.3d 457, 463 (6th Cir. 2021) (internal quotation marks omitted). This inquiry focuses on the principles and methodology applied and not just the conclusions reached. *Daubert*, 509 U.S. at 595.

At the outset of this inquiry, the undersigned notes that "[i]t is the responsibility of the court, not testifying witnesses, to define legal terms." *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994). The Court is bound by precedent "'requiring exclusion of expert testimony that expresses a legal conclusion.'" *Id.* (quoting *Hygh v. Jacobs,* 961 F.2d 359 (2d Cir.1992)). Legal conclusions are excluded "when the witness explicitly testifies, in 'specialized' legal terminology, that a defendant violated (or did not violate) the law." *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 317 (6th Cir. 2019).

- 2 -

**Opinion 1**

Maynard's first contested group of opinions concerns whether: (1) Deputy Kristin Wehrer "fraudulently" and "recklessly" filled out an inmate intake assessment form; (2) Wehrer's actions comport with accepted jail corrections practices; (3) Wehrer's actions "set in motion the events that led to" Daulton's death; and (4) the Kenton County Detention Center ("KCDC") failed to provide safe housing for Daulton.  [Record No. 47-2, p. 7]  Kenton County objects to Maynard's testimony regarding items (1) and (3) based on the Sixth Circuit's holding in *Berry*.  25 F.3d 1342, 1354.

Despite Jones' accusations of "pure gaslighting," Kenton County is correct.  [Record No. 55, p. 7]  Testimony regarding "fraud" and "recklessness" indirectly points to legal conclusions regarding Wehrer's liability, even though Jones' claims against her were dismissed.  Similarly, Maynard cannot testify that Wehrer's actions "set in motion the events that led to" Daulton's death because that testimony implies that her actions proximately caused Daulton's death, and Court has already established that argument fails as a matter of law. [Record No. 69, p. 26]

However, Maynard may testify regarding, in his opinion, Wehrer's actions or omissions about the intake assessment form were contrary to accepted corrections practices for jails. Such an opinion would draw on Maynard's experience and can be reasonably applied to the case in a way that could be useful to a jury.  Jones' remaining claim in this case concerns whether Kenton County failed to train or supervise staff to address conditions that allegedly led to Daulton's death.  Testimony based on Maynard's understanding of generally acceptable

jail procedures, applied to Wehrer's conduct, will be allowed *if* it steers clear of the legal conclusions outlined above.

## Opinion 2

Next, Kenton County challenges Maynard's opinions regarding KCDC's policies on information collection and use. Maynard asserts the following on page two of his report:

> I believe that Mr. Daulton was incarcerated under conditions posing a substantial risk of serious harm, and that Defendants Capps and Wehrer knew of the substantial risk and disregarded it by failing to take reasonable measures to abate it. I also believe that KCDC was responsible through its policies, training, and/or supervision of it's [sic] employees for failing to protect Daulton from being attacked by Maskiell.

[Record No. 47-2, p. 2] Maynard will not be allowed to share any of these opinions.

Whether Daulton was incarcerated under conditions posing a substantial risk of harm, and whether Capps and Wehrer knew of and disregarded this is a word-for-word reference to the 'failure to protect' test for individual constitutional liability outlined in *Westmoreland v. Butler Cnty.*, 29 F.4th 721, 729 (6th Cir. 2022). Further, KCDC's responsibility for Daulton's death through its policies and/or failure to train or supervise its employees directly implicates Jones' *Monell* claim. Both assertions amount to poorly-disguised legal opinions.

Kenton County next argues that, to the extent Maynard wishes to discuss Maskiell's health records from the University of Cincinnati Medical Center, doing so would be impermissible hearsay under Rule 801(c) of the Federal Rules of Evidence. Jones does not contest this assertion. Instead, she claims that "[t]he [d]efendants' scattered non-sensical argument does not address Mr. Maynard's opinion on this issue." [Record No. 8] Considering the argument waived, the Court will thus not allow Maynard to testify regarding Maskiell's health records. And consistent with the Court's prior findings, Maynard will not be allowed

to testify that KCDC's practices "leads to a failure to protect inmates and staff," because it implicates legal statements in Jones' dismissed claims against Capps and Wehrer.  In addition, it strips the proximate cause determination from the jury.  However, Maynard will be allowed to express an opinion that KCDC's use of JailTracker and its alert system falls short of generally accepted jail practices regarding information acquisition.  This falls within the realm of his Maynard's expertise, and it could be helpful to the jury in determining whether the jail's failure to train or supervise staff caused Daulton's death.

**Opinion 3**

Maynard's opinion that "reliance upon off-site decision makers and blind adherence to their decisions is contrary to generally accepted correction practices" will be allowed.  [Record No. 47-2, p. 10] Kenton County asserts that "Maynard has no experience, or even any tangential familiarity, with the telephonic behavioral health jail triage system created in KRS 210.365."  [Record No. 47, p. 13] And it further contends that "KRS 441.048 literally establishes that system as an acceptable correction practice."  [*Id.*, p. 12] Finally, it argues that Maynard ignores LPN Price's testimony and, specifically, her lack of subject matter expertise regarding suicidal or mentally ill inmates.  But Maynard does not seek to testify that Kentucky law is wrong or ill-founded.  Rather, he seeks to opine that the statute's implementation at KCDC contravened best practices.

KRS 210.365(12) provides, in relevant part, that "[t]he Cabinet for Health and Family Services shall create a telephonic behavioral health jail triage system to screen prisoners for mental health risk issues, including suicide risk."  The statute further states:

> [e]very prisoner, upon admittance to detention, shall be screened for mental health risk issues, including mental illness, suicide, intellectual disabilities, and

- 5 -

> acquired brain injury, by the personnel of the facility in which facility the
> prisoner is detained. Facilities have the discretion of using the telephonic
> behavioral health jail triage system created in KRS 210.365. Where the triage
> system indicates levels of behavioral health risk, the facility holding the prisoner
> may consider implementing the recommended protocols for housing,
> supervision, and care delivery that match the level of risk.

KRS 441.048. Notably, the statute indicates that the behavioral triage system is optional, and the facility *may consider* implementing the recommended protocols.

Kenton County seems to miss the point of Maynard's testimony regarding this issue. Maynard seeks to critique KCDC's alleged blind reliance on New Vista staff and their placement decisions in light of the lack of information on limited isolation cells and firsthand observations of inmates. Claiming that New Vista's implementation at KCDC *in practice* is contrary to generally accepted correction principles is different than asserting KCDC's *use of New Vista alone* was unacceptable.

Finally, Maynard's report indicates that he believes Nurse Price's personal knowledge of Daulton informed her recommendation that he should be cleared for the jail's general population, not necessarily that she was qualified to opine on his mental health. Maynard will be allowed to offer an opinion that adhering to New Vista's off-site inmate placement decisions contradicts best practices when jail staff may be in a better position to ascertain an inmate's safety. But to the extent that Maynard intends to testify that Nurse Price's opinion and report clearing Daulton for KCDC's general population served as medical guidance, such testimony will not be allowed, because Maynard is not qualified to testify regarding Nurse Price's medical capabilities. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (noting expert must be qualified by knowledge).

- 6 -

**Opinion 4**

Most of Maynard's fourth opinion will be excluded.  Much of this opinion relates to whether Capps was deliberately indifferent to a serious risk that Daulton would be harmed.  However, Jones' individual claims against Capps have been dismissed.  Therefore, this testimony has limited relevance to Jones' remaining *Monell* claim.

Next, Maynard attempts to opine on what Capps knew or should have known, which goes beyond his experience with jail practices, and such opinions would not be helpful to the jury.

Finally, Maynard asserts that KCDC's failure to perform timely cell checks "contributed to the death of John Daulton."  [Record No. 47-2, p. 11]  Similar to his proposed opinion that Wehrer's actions led to Daulton's death, this assertion will be excluded because it deprives the jury of the opportunity to make its own proximate cause determination.

Next, Maynard may not simply restate that cell checks were inadequate.  *See United States v. Rios*, 830 F.3d 403, 413 (6th Cir. 2016) (reaffirming that an expert's testimony must impart information beyond what is known by the average juror).  However, Maynard will be allowed to state his opinion regarding the importance of frequent cell checks for inmates in isolation.  And he will be allowed to testify that frequent lapses in cell checks for isolation cells are contrary to generally accepted corrections practices, because such information may assist the jury in determining whether jail staff was adequately supervised, and it falls within the purview of his expertise.

**Opinion 5**

Consistent with the Court's earlier analysis, Maynard's statements in the first paragraph of opinion five will be allowed regarding best practices to accommodate individuals assigned to isolation cells.  In the same vein, Maynard's statements in the second paragraph of opinion five will be excluded because they implicate proximate cause.

The first portion of Maynard's opinion addresses KCDC's four isolation cells relative to the total available beds and its authority to convert unused cells into isolation cells. Maynard's opinion that KCDC's practices were inflexible and contrary to generally accepted corrections practices will be allowed because it relates to Maynard's jail experience and may assist the jury determine whether KCDC staff was not trained or supervised properly.

The second portion states that "Capps did not advise his supervisor of the dilemma he faced … [had] Capps notified the supervisor as he should have … [and] [e]ither solution would have prevented the double celling of John Maskiell[.]"  [Record No. 47-2]  Maynard may not express opinions regarding what Capps *should* have done, because claims against Capps in his individual capacity have been dismissed, and such testimony is not relevant to the remaining issues to be presented to the jury.  *See In re Scrap Metal*, 527 F. 3d at 529 ("[T]estimony must be relevant, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue.") (cleaned up).  Further, such proposede testimony would invade the jury's decision on proximate cause, by instructing the jury on what would have happened if Capps had acted differently.  Thus, the first paragraph of opinion five is admitted, and the second paragraph is excluded.

## Opinion 6

Opinion six will be excluded in its entirety.  This opinion provides that "KCDC has exhibited a policy of inadequate training and supervision; and a custom of tolerance or acquiescence of federal rights violations."  [Record No. 55, p. 11] Kenton County argues that Maynard is unqualified to offer this opinion because "he has no basis to offer an opinion that KCDC training was deficient relative to applicable jail standards, and in fact, he did not receive or review any records about the training deputies received."  [Record No. 47, p. 16]  However, more fundamentally, both "opinions" directly contend that Kenton County violated the law, which is a determination left for the jury.

Kenton County is also correct that the "custom of tolerance or acquiescence of federal rights violations" opinion advances a *Monell* claim outside of the scope of this case.  [*See* Record No. 14, p. 13 ("Jones' Complaint does not allege a pattern of similar constitutional violations.").]  Further, Maynard's opinion regarding a policy of inadequate training or supervision improperly asserts a legal conclusion.  *See*, *e.g.*, *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 323 (6th Cir. 2023) ("Plaintiff must show (1) that the County's "training or supervision was inadequate for the tasks performed.").  In short, Maynard's proposed sixth opinion amounts to nothing more than a jury instruction from an expert witness.  *Maryville Anesthesiologists*, 942 F.3d 308, 317.

## II.

Based on the foregoing analysis, it is hereby **ORDERED** that Defendant Kenton County's Motion for to Exclude Certain Evidence [Record No. 47] is **GRANTED**, in part, and **DENIED**, in part, consistent with this Memorandum Opinion and Order.

Dated: June 9, 2025.



Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky