UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| TONYA JONES, Administratrix of the Estate of John Daulton, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 2: 23-164-DCR |
| V. | ) ) ) | |
| KENTON COUNTY, KENTUCKY | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) ) ) | |

*** *** *** ***

This matter is pending for consideration of two *in limine* motions filed by Defendant Kenton County and a separate motion for reconsideration of the Court's Memorandum Opinion and Order partially denying Kenton County's earlier motion for summary judgment. The first motion in *limine* [Record No. 66] will be granted, in part, and denied, in part. The second motion in *limine* [Record No. 74] will be granted in its entirety. Finally, the motion for reconsideration [Record No. 74] will be denied.

**I. Background**

This action was initiated by Plaintiff Tonya Jones ("Jones"), as the administratrix of the estate of John Daulton ("Daulton"), after Daulton was allegedly violently attacked by Jonathan Maskiell in a shared cell at the Kenton County Detention Center ("KCDC").[1] Daulton passed away from his injuries a week later. For the reasons outlined in the Court's

---

[1] A more detailed account of the alleged facts can be found in the Court's Memorandum Opinion and Order at Record No. 69.

- 1 -

June 4, 2025, Memorandum Opinion and Order, Jones' claims against individual Defendants deputy jailers Kristin Wehrer and Jared Capps were dismissed, and Jones' claim for failure to train or supervise asserted against Kenton County was permitted to proceed to trial.[2]

## II. The Omnibus Motion in *Limine*

A party through a motion *in limine* seeks "to exclude anticipated prejudicial evidence before the evidence is actually offered." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (citing *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984)). "[M]otions *in limine* are not intended to resolve factual disputes," and courts should only exclude challenged evidence when it is "clearly inadmissible." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (citing *Williams v. Johnson*, 747 F. Supp. 2d 10, 14 (D.D.C. 2010)). Although district courts enjoy "broad discretion in determining the relevancy of evidence and in passing upon its admissibility under Rule 401," the "better practice is to defer evidentiary rulings until trial unless the evidence is clearly inadmissible on all potential grounds." *Middleton v. SelecTrucks of Am., LLC*, 589 F. Supp. 3d 687, 691 (W.D. Ky. 2022) (citation modified). As such, a court's ruling *in limine* is "no more than a preliminary, or advisory, opinion" that may be altered or amended at trial. *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983)).

Additionally, Rule 26 of the Federal Rules of Civil Procedure requires parties to disclose individuals and documents "that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii). And Rule 37 of the Federal Rules of Civil Procedure outlines sanctions for failure to comply

---

[2] *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

- 2 -

with Rule 26. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

The Court entered a Scheduling Order pursuant to Rule 16 of the Federal Rules of Civil Procedure on May 24, 2024. [Record No. 19] It provides that "[s]upplementation under Rule 26(e) is due within thirty (30) days of the discovery of new information, but by no later than thirty (30) days prior to the close of discovery." [*Id.*, ¶ 3] It also requires that "[n]o later than December 31, 2024, the plaintiff must disclose the identity of expert witnesses who may be used at trial and written reports by the expert witnesses as required by Rule 26(a)(2)." [*Id.*, ¶ 2] Kenton County first moves to exclude certain witnesses and exhibits proffered by Jones on the basis that their untimely disclosure violates Rule 37(c) and the Scheduling Order.

**Proposed Witnesses 3-11:**

Kenton County challenges the admission of Jones' proposed witnesses 3-11 on the basis that they were revealed months after the deadline outlined in the Scheduling Order. Jones disclosed Covington police officers Mathews and Igo to Kenton County as potential witnesses on January 18, 2025. But Jones was aware that she could call them as witnesses to support her claims as early as August 6, 2024. [*See* Record No. 54-8, p. 2 (Kenton County Detention Center Intake Assessments for Bradley Grote and Charles Kuhl, which include Mathews and Igo as arresting officers).] Further, it appears counsel for Jones worked with an attorney in a case in which Kenton County was not a party, eliciting further information for use here. [*See*

- 3 -

Record No. 52-12 (November 7, 2024, Deposition of officer Samuel Mathews in *Kallmeyer v. Mathews*, Civil Action No. 2: 24-051-DCR).]

The Court may allow these witnesses to testify if Jones' "failure [to disclose them] was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). However, Jones' late disclosure is neither substantially justified, nor harmless in this case. Regarding substantial justification, Jones points to objections to her requests for *trial witnesses* made by Kenton County that rely on the deadlines outlined in ¶ 10(a) of the Scheduling Order. The Scheduling Order required the parties to submit a witness list for trial by May 16, 2025. [*Id.*, ¶ 10]

Jones appears to conflate trial witnesses with individuals "likely to have discoverable information" she was required to disclose under Rule 26(a). She further asserts that she "has followed suit by providing comprehensive disclosure of witnesses and exhibits as they became known to counsel." [Record No. 71, p. 2] Essentially, she contends that because Kenton County refused to reveal its trial witnesses before the May 16, 2025, deadline (which was a proper objection), her late Rule 26(a) disclosures are acceptable because she was simply "following suit." But federal court is not a playground where a "he started it" argument prevails. And even if it were, Kenton County did not "start it," because it adhered to the Scheduling Order. Accordingly, testimony from officers Mathews and Igo will be excluded.

On similar grounds, Jones' fifth, sixth, and seventh proposed witnesses, officers Hancock, Rabe, and Zerhusen, will not be permitted to testify. These witnesses were disclosed on February 24, 2025, four days before the close of discovery. But again, Jones knew or should have known they possessed discoverable information as early as June 30, 2024. [*See* Record

No. 46-3, pp. 24, 28, and 30 (officer Rose mentions officers Rabe, Zerhusen, and Hancock in her deposition).]

Likewise, Jones' proposed witness Stephanie Howes (proposed witness 13) was not formally identified to Kenton County until May 16, 2025.[3]  Jones argues that her August 3, 2024, disclosure of emails to and from Howes and her identification of any "individuals necessary to authenticate any exhibits, videos, or other information provided through discovery in this case" should suffice. [Record No. 71, p. 4] But Rule 24 requires "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses[.]" Fed R. Civ. P. 26(a)(1)(A)(i).  Jones' vague disclosure of "individuals necessary to authenticate any exhibits, videos, or other information" does not remotely comport her with obligations regarding expert witnesses outlined in the Scheduling Order.[4]  [Record No. 19, ¶ 2 ("No later than December 31, 2024, the plaintiff must disclose the identity of expert witnesses who may be used at trial *and written reports by the expert witnesses* as required by Rule 26(a)(2).") (emphasis added).]

Finally, Jones did not disclose other proposed medical expert witnesses (Dr. Goodman, Dr. Bowman, nurse Love, nurse Blevins, and Psychiatric Social Worker Hayden; witnesses 8-

---

[3]   Jones, however, did disclose emails to and from Howes much earlier. Regardless, Howe's testimony and the Talbert House emails will be excluded on other grounds the Court will address below.

[4]   Even assuming Howe was not offered as an expert witness, Jones' late disclosure still violates ¶ 3 of the Scheduling Order.

12) until January 18, 2025, or 18 days after her deadline to do so under the Scheduling Order.[5] Allowing these witnesses to testify (other than to authenticate documents that were timely disclosed) would prejudice Kenton County. [*See* Record No. 73, p. 5 ([D]efendants … were not afforded an opportunity to make a record or protect it in a case where plaintiff has disclosed damages exceeding ten million dollars.").]

Thus, the only remaining question is whether Jones' untimely disclosures were justified. They were not, considering extensive discovery in the case, and the fact that Jones should have disclosed the witnesses months earlier. [*See* Record No. 73, p. 8 (Jones admits that Love, Goodman, and Bowman treated Daulton from May 14, 2023, to May 21, 2023, and that Blevins and Hayden "turned Maskiell away" on May 13, 2023).] The most basic diligence in discovery would have led Jones to identify these individuals as possessing relevant information early in the case, triggering disclosure obligations. And Jones failed to comply with the Scheduling Order. Witnesses 3-13 will not be permitted to testify at trial because there is no excuse for any of Jones' late witness disclosures.[6]

**Proposed Exhibits:**

Kenton County next challenges several of Jones' proposed trial exhibits on various grounds.

---

[5] It is questionable whether Kenton County's classification of witnesses 8-13 as "experts" is accurate. In any event, Jones failed to timely disclose them even if they were considered lay witnesses.

[6] These witnesses will not be permitted to provide testimony at trial, generally, because they were not disclosed by Jones in a timely fashion. However, to the extent they are required for the authentication of documents that were timely disclosed (*inter alia*, Daulton's medical bills), the witnesses will be allowed *solely* for that purpose.

First, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. But even relevant evidence should be excluded from consideration under a few circumstances. Evidence should be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Jones' remaining claim alleges that Kenton County's failure to adequately train or supervise its jail staff with respect to its failure to protect inmates proximately caused Daulton's death. To establish Kenton County was deliberately indifferent, she "must show (1) that the County's 'training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury.'" *Helphenstine v. Lewis Cnty*, 60 F.4th 305, 323 (6th Cir. 2023) (citing *Winkler v. Madison Cnty*., 893 F.3d 877, 902 (6th Cir. 2018)). Further, because her failure to train or supervise claim rests on a "single incident" theory, she is not required to demonstrate a pattern of similar constitutional violations to establish liability. Instead, the plaintiff must show Kenton County "failed to train [or supervise] its employees to handle recurring situations presenting an obvious potential for a constitutional violation." *Id.* Thus, for evidence to be relevant, it must have some relation to this claim.

Finally, Kenton County asserts that some of the proposed exhibits contain impermissible hearsay. Hearsay is defined as a statement made by a declarant (outside of testimony at an instant trial or hearing) that a party attempts to offer into evidence to prove the

truth of the matter asserted in the statement. Fed. R. Evid. 801. But this rule is subject to several exceptions. *See* Fed. R. Evid. 803.

### A. Covington Police Body Camera Footage (PX-1)

Kenton County first contends that body camera footage depicting Maskiell's arrest and transportation to KCDC is not relevant because KCDC deputies were not present, it is cumulative of expected testimony from officer Rose, who arrested him, and because it contains hearsay evidence. The Court will exclude the footage because it is cumulative of Rose's expected testimony, her interaction arresting Maskiell, and testimony regarding Maskiell's behavior that KCDC staff observed firsthand.

### B. Maskiell's Arrest Paperwork (PX-2)

Kenton County next argues that Maskiell's arrest paperwork is irrelevant to Jones' *Monell* claim because "the offense of arrest is not a reliable indicator of dangerousness; and even if it [were,] there is often insufficient information about each new detainee's criminal history in order to make that assessment." *Gifford v. Hamilton Cnty.*, No. 24-5893, 2025 WL 1541805, (6th Cir. May 30, 2025). Kenton County is correct. Jones will have the opportunity to introduce ample evidence demonstrating Maskiell's behavior was unpredictable and dangerous within the purview of KCDC staff and the arresting officer. The paperwork will be excluded because it is irrelevant and largely cumulative.

### C. Daulton and Maskiell's Intake Assessments (PX-3 and PX-4)

Kenton County asserts that "[t]he initial intake form[s] for both Maskiell and Daulton are irrelevant to any potential triable issues in this case since it is unrefuted that Capps did not complete it for Daulton, … and Maskiell's form, … was not reviewed by Capps or relied on

- 8 -

by LCSW Snapp when determining his risk level." [Record No. 66, p. 8] However, Jones points out that colonel Trey Smith stated that correct completion of the "Officer's Questions" on the Jail's Intake Assessment by Jail Deputies was of the utmost importance. Further, it could be helpful for the jury to see firsthand what questions the intake form includes. Specifically, it could aid their determinations regarding the severity of Kenton County's alleged failure to train or supervise its deputies on inmate booking procedures. The intake forms are admissible, assuming a proper foundation is supplied by the plaintiff.

### D. JailTracker Screenshots (PX-10)

Next, Kenton County contends that the screenshots from JailTracker are irrelevant to Jones' remaining claim. However, the screenshots could be used to illustrate KCDC's alleged substandard information collection and retention practices concerning mentally unstable or violent inmates. Thus, Jones will be allowed to present exhibit PX-10 assuming a proper foundation is supplied by the plaintiff.

### E. Daulton's Hospital and Funeral Bills (PX-15 and PX-23)

Kenton County insists that Daulton's hospital and funeral bills should not be admitted because Jones "failed to disclose witnesses who could authenticate these records." [Record No. 66, p. 9] But Jones disclosed the records in August of 2024. [Record No. 66-2, p. 2] Although Jones cannot call witnesses to testify outside of the scope of the documents, the documents themselves do not cause Kenton County any hardship, considering their early disclosure. However, because the issue of damages is not yet settled and may be resolved closer to trial, the undersigned will not rule on the admissibility of either bill at this stage.

### F. University of Cincinnati Medical Records and Talbert House Emails (PX-17 and PX-18)

Kenton County argues that the emails from the Talbert House and the University of Cincinnati medical records contain impermissible hearsay or, alternatively, they are irrelevant. Although the documents were timely disclosed, they are not relevant to Jones' *Monell* claim. The emails and the medical records establish that Talbert House and hospital staff thought Maskiell was unstable and potentially dangerous. But they are not relevant to whether Kenton County was deliberately indifferent in failing to train or supervise its staff regarding a failure to protect inmates. Neither KCDC deputies nor officer Rose knew or should have known of these emails or Maskiell's hospital records. Further, other evidence will be presented concerning Maskiell's behavior at KCDC and his interactions with officer Rose and jail deputies which could impact a jury's view of Kenton County's liability.

### G. Charles Kuhl and Bradley Grote Citations (PX-19 and PX-21)[7]

Kenton County moves to exclude the arrest citations for Grote and Kuhl, two inmates who previously died while inmates at KCDC because the citations implicate purportedly unrelated litigation. These citations will be excluded for the reasons outlined in part III below.

### H. Photo of Jones and Daulton Before the Incident (PX-24)

Kenton County contends that PX-24 should be excluded because it will likely engender unfair sympathy. The Court agrees. If Jones wished to present a picture of Daulton before the assault, she could have provided a picture of Daulton alone, rather than a father-daughter photo

---

[7] Kenton County has withdrawn its objections to the separate intake citations for inmates Charles Kuhl and Bradley Grote and stipulated that the exhibits (PX-20 and PX-22) are relevant and admissible. [Record No. 73, p. 9]

of them together that likely would cause unfair prejudice. Accordingly, PX-24 will be excluded.

### I. Photos and Videos of Daulton Following the Incident (PX-25 and PX-26)

Kenton County contends that hospital photos and videos of Daulton following the assault should be excluded because they are unduly prejudicial. First, the photos (and the video) are relevant because they demonstrate the extent of Daulton's injuries and could be helpful to a jury in determining damages for pain and suffering. This outweighs the risk that Daulton's rough physical condition will prejudice Kenton County. However, the video is similar to the images, except that it contains audio of Jones asking Daulton whether she could hear him while he is purportedly unconscious. The video does not provide any additional value in assisting the jury and is largely cumulative in nature. And it likely would engender sympathy and cause unfair prejudice to Kenton County. Thus, PX-25 is admissible, but PX-26 will be excluded.

### Objections to Arguments at Trial

Kenton County also objects to several potential subjects and themes Jones may attempt to introduce at trial. However, the Court is not inclined to issue a ruling on most of these issues in advance of trial. Determinations regarding statements and themes Jones intends to present to the jury, hypothetical questions, and the scope of recoverable damages would be premature.

Notwithstanding this general determination, the undersigned will preclude Jones from referencing liability insurance for the purposes of proving whether Kenton County bears fault under Rule 411 of the Federal Rules of Evidence. *See id.* ("Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or

otherwise wrongfully. But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control.")

### III. The Second Motion in *Limine*

Kenton County's second motion in *limine* primarily addresses testimony related to the deaths of KCDC inmates Charles Kuhl and Bradley Grote. Kenton County argues that Jones should not be allowed to introduce evidence of their deaths because: (1) the deaths are not relevant to Jones' *Monell* claim; and (2) evidence of the deaths is unduly prejudicial to Kenton County.

Kenton County first asserts that Jones' claims regarding Kenton County jail deputies' failure to protect Daulton are incompatible with the actions initiated on behalf of now-deceased inmates Grote and Kuhl. Specifically, in *Grote v. Kenton Cnty.*, 85 F.4th 397 (6th Cir. 2023), Grote died of a drug overdose, and his estate brought claims against Kenton County alleging it was deliberately indifferent to his *serious medical needs*. And in *Kuhl v. Fields*, Civil Action No. 2: 21-57-DLB (E.D. Ky. 2021), Kuhl's estate raised similar claims of deliberate indifference to serious medical needs and a failure to train or supervise claim concerning Kenton County's medical screening procedure for detainees.

Conversely, Jones contends that "it is inconsequential that Grote and Kuhl allegedly died from different types of Constitutional violations; failure to provide adequate medical care vs. failure to protect an assault from another prisoner." [Record No. 81, p. 3] She further asserts that "[t]he important evidentiary factor is KCDC's failure to properly train and supervise its employees…over years……to ask the arresting officers the required intake questions." [*Id.*, pp. 3-4] But this only undermines her argument because Kenton County

concedes that the intake forms in *Grote* and *Kuhl* should be admissible. Jones attempts to balloon her *Monell* claim to encompass deliberate indifference to (any) constitutional rights; however, a deliberate indifference to serious medical needs claim is distinct from a deliberate indifference to an obvious risk of harm (failure to protect) claim. In fact, the Sixth Circuit has formulated separate tests for each. *Compare Grote v. Kenton Cnty*, 85 F.4th 397, 406 (6th Cir. 2023), *with Westmoreland v. Butler Cnty.*, 29 F.4th 721, 729 (6th Cir. 2022).

In addition, Jones' *Monell* claim is premised on a single incident theory of liability. See *Helphenstine*, 60 F.4th at 323. This means that demonstrating a series of constitutional violations is not required to prove Kenton County was deliberately indifferent. Thus, evidence of the deaths of inmates Grote and Kuhl are superfluous to a jury's determination regarding whether Kenton County "failed to train its employees to handle recurring situations presenting an obvious potential for a constitutional violation." *Id.* Accordingly, the relevance of the inmates' deaths is questionable. However, Kenton County's concern that evidence of the deaths could cause a jury "to view the defendant as a poor caregiver in the abstract rather than in relation to what happened to Daulton" is well-founded. [Record No. 75, p. 6] Although the deaths of Kuhl and Grote raise generalized questions of deliberate indifference, any kernel of relevance the evidence provides is outweighed by the substantial likelihood the evidence unfairly prejudices the jury's perception of Kenton County.

### IV. The Motion for Reconsideration

A motion to reconsider is treated as a motion to alter or amend judgment under Rule 59(e) of the Federal Rules of Civil Procedure. *See Inge v. Rock Fin. Corp.*, 281 F.3d 613, 617 (6th Cir. 2002). A motion under Rule 59(e) may be granted where there is a clear error of law,

newly discovered evidence, an intervening change in the law, or when doing so would prevent manifest injustice. *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).

Kenton County moves for reconsideration of a portion of the Court's previous Memorandum Opinion and Order [Record No. 69] denying summary judgment in part. Specifically, it contests the Court's determination that this case is distinct from *Gifford v. Hamilton Cnty.*, No. 24-5893, 2025 WL 1541805, (6th Cir. May 30, 2025). Kenton County attempts to cherry-pick facial similarities between this case and *Gifford* despite important differences.

Kenton County first asserts that KCDC's lack of information on inmate Johnathan Maskiell makes this case the same as *Gifford*. Specifically, it contends that "[a]t KCDC, high watch detainees who behave appropriately throughout booking and the classification process can be paired with another detainee. This is analogous to Hamilton County Tennessee's 'maximum security' system — before formal classification, inmates (even those with a purported history of violence) can be paired together." [Record No. 74, pp. 2-3] However, New Vista's triage system is intended to *isolate* inmates who are at serious risk of self-harm or violence after a specific mental health assessment, rather than placing them together. Further, this determination is a *per se* form of *formal* classification that did not occur in *Gifford*. Instead, *Gifford informally* classified inmates at booking based on their general behavior at intake.

Kenton County further argues that "this is a distinction without a difference since Hamilton County, just like Kenton County, allowed detainees with a purported history of violence to share a cell." [*Id.*, p. 3] It also states that "nnder [sic] normal practices at KCDC,

inmates on high watch can be housed together, unless they are violent." [*Id.*] But the *Gifford* jail's purported grouping of violent and non-violent inmates together at booking is not the same as the alleged practice at Kenton County, and there is a difference in this distinction. Hamilton County's (*Gifford*) system placed all inmates at booking together randomly. Accepting the plaintiff's allegations as true, Kenton County had a heightened duty to protect inmates assigned to high watch because they are designated as particularly vulnerable or unstable. In other words, the Hamilton County system of initially and intentionally classifying all inmates as maximum security leads to a lower statistical chance of an incident than KCDC's system of unintentionally pairing the inmates assigned to *high watch*.

Kenton County next argues that "the only the [sic] fact from which to infer Maskiell's dangerousness is the hearsay reference in the arrest paperwork about violent tendencies[.]" But this is not necessarily true. Start with deputy jailer Jared Capps. Although the Court concluded that Capps was not deliberately indifferent towards Daulton's safety, the determination did not purport to exonerate his actions as devoid of *negligence*.[8] Capps noted that Maskiell punched a steel door when he was denied a blanket, and that he was the oddest person Capps had ever observed in the jail. Capps further avoided placing Maskiell in a cell with inmate Ricky Cornell because he thought it would be safer for everyone, implying he believed Maskiell may have posed a threat to Cornell. Capps was also only five months into his tenure at KCDC when he placed Maskiell with Daulton. In other words, even if Capps was not deliberately indifferent, a jury could find that Maskiell exhibited indicia of violence, and that Kenton

---

[8]  The undersigned dismissed Jones' claims against Capps individually after determining he was not *deliberately indifferent*, a higher standard than negligence.

County's failure to train or supervise Capps (among other alleged failures to train or supervise staff) contributed to Daulton's death.

Finally, Kenton County overlooks a salient element of the *Gifford* decision—Gifford's lack of comprehensive evidence. *See id.*, 2025 WL 1541805, at *4 ("While he argues that there is a genuine issue of material fact as to the adequacy of the county's training and supervision, his failure to introduce sufficient evidence hamstrings this argument."). The Sixth Circuit stressed that single-incident liability is rare precisely because the plaintiff bears a high burden in demonstrating the need for specific training and supervision is obvious. *Id.* (citing *Gambrel v. Knox County*, 25 F.4th 391, 410 (6th Cir. 2022)).

Here, Jones has provided sufficient evidence to support her failure to train or supervise theory. For example, she alleges that the JailTracker system was essentially defunct, and that even after Maskiell attacked Daulton, no alert appears on his inmate profile. She also alleges that New Vista clinicians were unaware of the implications of their watch designations, and that jail staff restricted isolation to four cells—whether inmates were assigned to high watch based on suicide risk *or* violence. In addition, she alleges that cell checks were sporadic in contravention of Kentucky's regulatory requirements. None of those conditions existed in *Gifford*, a case in which the Sixth Circuit properly precluded liability on a claim that necessitates a mountain of evidence.

### V. Conclusion

Accordingly, it is hereby **ORDERED** as follows:

      1.      Defendant Kenton County's omnibus motion in *limine* [Record No. 66] is **GRANTED**, in part, and **DENIED**, in part, consistent with this Memorandum Opinion and Order.

      2.      Defendant Kenton County's second motion in *limine* [Record No. 75] is **GRANTED**.

      3.      Defendant Kenton County's motion for reconsideration [Record No. 74] is **DENIED**.

      Dated: July 31, 2025.

                                    Danny C. Reeves, District Judge
                                    United States District Court
                                    Eastern District of Kentucky