UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | |
|---|---|
| TONYA JONES, Administratrix of the Estate of John Daulton, </br></br>Plaintiff, </br></br>V. </br></br>KENTON COUNTY, KENTUCKY </br></br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) </br></br>Civil Action No. 2: 23-164-DCR </br></br>**MEMORANDUM OPINION AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Plaintiff Tonya Jones' motion for reconsideration [Record No. 86] of the Court's Memorandum Opinion and Order [Record No. 85] partially granting Defendant Kenton County's first motion in *limine*. Specifically, Jones moves the Court to alter or amend its ruling excluding two exhibits and one witness from trial. The motion for reconsideration [Record No.86] will be granted, in part, and denied in part, for the reasons that follow.

I.

A motion to reconsider is treated as a motion to alter or amend judgment under Rule 59(e) of the Federal Rules of Civil Procedure. *See Inge v. Rock Fin. Corp.*, 281 F.3d 613, 617 (6th Cir. 2002). A motion under Rule 59(e) may be granted where there is a clear error of law, newly discovered evidence, an intervening change in the law, or when doing so would prevent manifest injustice. *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). However, the Sixth Circuit has consistently held that a Rule 59 motion should not be used

either to reargue a case on the merits or to reargue issues already presented, *see Whitehead v. Bowen*, 301 F. App'x 484, 489 (6th Cir. 2008) (citing *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)), or otherwise to "merely restyle or rehash the initial issues," *White v. Hitachi, Ltd.*, 2008 U.S. Dist. LEXIS 25240, 2008 WL 782565, at *1 (E.D. Tenn. Mar. 20, 2008) (internal quotation marks and citation omitted).**2** "It is not the function of a motion to reconsider arguments already considered and rejected by the court." *Id*.

## II.

Jones moves for reconsideration a portion of the Court's previous Memorandum Opinion and Order [Record No. 85], granting defendant's motion in *limine* as to two items of evidence and one witness: the body worn camera footage of Officer Alexandra Rose (PX-1), Jonathan Maskiell's arrest paperwork (PX-2), and the testimony of Samuel Mathews. In evaluating this evidence, the Court considers whether it is relevant to the sole remaining claim in this case—a municipal liability claim against Kenton County under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

Under 42 U.S.C. § 1983, a governmental entity may be held liable only when an official policy or custom causes a violation of constitutional rights. *Monell,* 436 U.S. at 691. "[o]ne way to prove an unlawful policy or custom is to show a policy of inadequate training or supervision." *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (citing *City of Canton v. Harris*, 489 U.S. 478, 387 (1989)). Because Jones does not allege multiple constitutional violations, she must show "a single violation of federal rights, accompanied by a showing that the municipality has failed to train its employees to handle recurring situations

presenting an obvious potential for a constitutional violation." *Helphenstine v. Lewis Cnty*, 60 F.4th 305, 323 (6th Cir. 2023) (citing *Board of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997) (cleaned up)). To demonstrate deliberate indifference by Kenton County, Jones "must show (1) that the County's 'training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury.'" *Helphenstine*, 60 F.4th at 323 (6th Cir. 2023) (citing *Winkler v. Madison Cnty.*, 893 F.3d 877, 902 (6th Cir. 2018)).

### The Body Worn Camera of Officer Alexandra Rose (PX-1)

Jones identifies three specific, time-stamped segments from Officer Rose's body-worn camera footage that she seeks to introduce into evidence:

1. From 1:30 to 8:10 (PX-1-B),

2. From 59:20 to 59:50 (PX-1-D), and

3. From 1:03:00 to 1:05:45 (PX-1-D).

Jones explains that the first segment captures Officer Rose's initial confrontation with Maskiell, who appears shirtless and bloody. [Record No. 86 at 1] Maskiell claims in the footage that the blood came from "Mr. Davenport." [*Id.*] The second segment shows Officer Rose personally delivering page one of Maskiell's arrest paperwork to Deputy Wehrer. [*Id.* at 2] The third segment depicts a Kenton County Detention Center ("KCDC") nurse examining Maskiell's hands. [*Id.*] Maskiell states that he injured them because he is "going nuts." [*Id.*] This portion also shows Maskiell being accepted into custody at KCDC. [*Id.*]

Previously, the Court previously granted the defendant's motion in *limine* to exclude this video evidence, concluding it was cumulative of Officer Rose's anticipated testimony. [Record No. 85 at 8] At that time, Jones had designated as a proposed exhibit the entirety of the Covington Police Department's video footage related to Maskeill's arrest and transportation to jail. Since then, however, Jones has substantially narrowed the video to include only the most relevant portions. Now, she contends that this edited footage represents the most accurate and reliable account of Maskiell's arrest, transport, and transfer to KCDC. [Record No 86 at 2] Jones argues that testimony alone cannot adequately convey the apparent severity of Maskiell's mental state and emphasizes the importance of the jury seeing how Maskiell presented less than 15 hours before the attack on Daulton. [*Id.*] She further maintains that the footage is not cumulative of Officer Rose's testimony but instead offers the clearest evidence of their interaction and is critical for the jury to fully grasp Maskiell's observable psychological condition at the time. [*Id.*]

After reviewing the specific, limited portions of the proposed video evidence, the Court finds it appropriate to amend its prior ruling regarding the exclusion segments of Officer Rose's body worn camera footage from 1:30 to 8:10 (PX-1-B) and from 1:03:00 to 1:05:45 (PX-1-D). The first segment of Officer Rose's body-worn camera footage from 1:30 to 8:10 is relevant because it shows what Officer Rose saw and knew at the time—information that the intake deputy never requested, even though the officer intake form questions might have prompted to share it.

Jones argues that had the intake deputy inquired, that information might have influenced the decision on where to place Maskiell, potentially preventing the incident that

later occurred. This is relevant to the third element in *Helphenstine*—whether an inadequacy closely related to or actually caused the injury. Of course, the jury may ultimately agree with the defense's argument that Maskiell's behavior was not foreseeable and, therefore, find that the intake deputy's failure to ask intake questions did not result in a violation of Jones' constitutional rights. Additionally, the footage is not unduly prejudicial. Maskiell appears calm throughout and does not behave aggressively towards toward Officer Rose or anyone else. It is not obvious which party benefits more from the footage, but that is not a proper inquiry for the Court.

The second segment (59:20 to 59:50) is relevant because it shows Officer Rose handing the citation from the Covington Police Department, related to Maskiell's arrest, to Deputy Wehrer at the time Maskiell was accepted into custody. This portion of the video will be excluded, except for impeachment purposes, because both Officer Rose to Deputy Wehrer can testify to the document transfer. The footage is cumulative of their expected testimony and unnecessary for purposes other than impeachment.

The third segment (1:03:00 to 1:05:45) is relevant as it depicts Deputy Wehrer and the KCDC nurse present during the nurse's examination of Maskiell, as he is accepted into custody. This appears to be relevant to whether Deputy Wehrer and the nurse observed any conditions that should have raised concerns regarding Maskiell's placement. Thus, it is related to the third element of *Helphenstine*—whether an inadequacy closely related to or actually caused the injury. Unlike the second segment, this footage is not cumulative, and it is not unduly prejudicial, as it may represent the best evidence of what Deputy Wehrer and the nurse actually observed.

**Maskiell's Arrest Paperwork (PX-2)**

Jones argues that pages 1, 2, and 4 of the four-page exhibit should not be excluded from evidence. [Record No.86 at 2] She does not object to the exclusion of page 3, provided it is not required for impeachment purposes. [*Id.* at 3] Page 1 is the citation from the Covington Police Department related to Maskiell's arrest for an Ohio parole violation. Jones notes that Officer Rose handed this citation to KCDC staff upon Maskiell's arrival. The citation includes the warning: "CAUTION VIOLENT TENDENCIES/PREV ARREST." Jones claims that this language originated from a National Crime Information Center ("NCIC") report, which appears on page 4 of the exhibit. Page 2 contains Officer Rose's field information report narrative.

Jones argues that the arrest paperwork is directly relevant to her *Monell* claim. Specifically, she contends that Deputy Jared Capps (who placed Maskiell in an isolation cell with John Daulton) did not see any law enforcement warning about Maskiell's violent tendencies and failed to check jail's reporting system before doing so. [*Id.* at 3] She argues that the documents show KCDC staff received, but ignored, a clear warning—supporting the third element under *Halperstine:* that the ignored NCIC alert was closely related to, or actually caused, the resulting injury. [*Id.* at 4]

The Court previously excluded this exhibit based on *Gifford v. Hamilton Cnty.*, No. 24-5893, 2025 WL 1541805, (6th Cir. May 30, 2025), reasoning that Maskiell's arrest paperwork was irrelevant to the triable issue of failure to train or supervise because "the offense of arrest is not a reliable indicator of dangerousness; and even if it [were,] there is often insufficient information about each new detainee's criminal history in order to make that assessment."

[Record No 85 at 8 (citing *Gifford,* No. 24-5893, 2025 WL 1541805)]  But Jones argues that the Court's reliance on *Gifford* is misplaced.  [Record No. 86 at 4]  Unlike the plaintiff in *Gifford*, who based their *Monell* claim on the failure to segregate inmates based solely on their offense of arrest, Jones emphasizes that her claim rests on the Kenton County's failure to act on a specific NCIC warning.  [*Id.*]  She further argues that this paperwork—along with supporting video and audio evidence [PX-1, PX-8, and PX-14]—is necessary to demonstrate the obviousness of the risk.  [*Id.* at 5]  Jones also contends that no witness has testified Maskiell appeared violent or dangerous, in part because staff have "significantly downplayed their concerns regarding Maskiell's condition" [*Id.*]

After reviewing the arrest paperwork, the Court will reconsider its decision to exclude page 1 of PX-2.  This page is relevant because it shows what the KCDC staff might have known at the time they took custody of Maskiell.  Unlike *Gifford*, Jones is not arguing that Maskiell's placement should have been based on his offenses, but rather on the warning of his violent tendencies included in the document Officer Rose gave to Deputy Wehrer at the time of transfer.  Additionally, the rule against hearsay does not bar the admission of page 1, as it is being offered to demonstrate that KCDC was on notice of the warning it contained, not to prove the truth of the matter asserted; namely, that Maskiell had violent tendencies.  *See* FRE 801.  However, the NCIC report included in Page 4 will be excluded, as it was not received by KCDC staff at the time they took custody of Maskiell and, therefore, is not relevant to what they might have known at the time.

Regarding the admissibility of page 2, the field report contains inadmissible hearsay concerning Maskiell's behavior and statements, with no applicable exception.  *See* FRE 802.

Additionally, the report was never delivered to KCDC, as it was written by Officer Rose after she had transferred custody of Maskiell. Jones argues that Officer Rose's report qualified as a present sense impression of Maskiell's behavior but the report was not created while or immediately after Officer Rose observed Maskiell and, therefore, does not meet the requirements for the present sense impression exception. *See* FRE 804(a). Excluding Officer Rose's field report does not prevent Jones from questioning her about Maskiell's arrest.

### Testimony of Samuel Mathews

Jones argues that the deposition testimony of Covington Police Officer Samuel Mathews—taken in an unrelated case, *Kallmeyer v. Mathews*, (Civil Action No. 2:24-051-DCR)—regarding his experience with KCDC deputies and their failure to ask the "Officer's Questions" should not be excluded from evidence. [Record No. 86 at 6] However, Jones has not met any of the criteria required for the Court to alter or amend its prior judgment under Rule 59(e). Specifically, she has failed to show a clear error of law, newly discovered evidence, an intervening change in controlling law, or a need to prevent manifest injustice. *See Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 841 (6th Cir. 2018). The Court previously excluded Officer Mathew's testimony because Jones did not timely disclose him as a potential trial witness, as required by the Scheduling Order. [Record No. 85] For that reason, and for the additional reasons outlined below, the Court declines to alter or amend its prior opinion regarding this issue.

Testimony from Mathews—taken in a separate case involving different facts, including a prior transfer of custody and subsequent in-custody death—is not relevant here. The only triable issue in this case is Jones' failure to train or supervise claim, which rests on a single

incident theory. [*See* Record No. 69.] Jones has not alleged repeated constitutional violations. Moreover, admitting Mathews' testimony would present a substantial risk of unfair prejudice, confusing the issues, misleading the jury, and wasting time. Jones is attempting to include testimony from Mathews regarding the intake deputy not asking the "Officer's Questions" on the KCDC intake assessment form. However, Jones will have the opportunity to present evidence on this issue through Officer Rose's testimony, specifically that she was never asked the questions listed on the intake form. [*See* Record No. 29-2 at 67:2-68:15] The exclusion of Officer Mathew's deposition does not prevent Jones from presenting evidence relevant to this issue at trial.

In summary, the Court finds no basis to disturb its prior ruling on the exclusion of this testimony and denies the motion to alter or amend the judgment regarding Officer Mathews' testimony. However, the Court reconsiders its prior ruling on the limited segments of Officer Rose's body-worn camera footage (PX-1) and regarding page one of Maskiell's arrest paperwork (PX-2). Accordingly, it is hereby

**ORDERED** that Plaintiff Tonya Jones' motion for reconsideration [Record No.86] is **GRANTED** regarding the limited portion of Officer Rose's body-worn camera footage and page one of Jonathan Maskiell's arrest paperwork. The motion is **DENIED** in all other respects.

Dated: October 17, 2025.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky